UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

                        Plaintiff,

              v.                                         **DECISION AND ORDER**
                                                               92-CR-159-A

DARRYL JOHNSON,

                        Defendant.
_____

      Defendant Darryl Johnson, who was previously sentenced to five (5) consecutive terms of life imprisonment, together with three (3) additional terms of life imprisonment and a term of imprisonment of ten (10) years, each to be served concurrently with the consecutive life terms, has filed a number of *pro se* motions which are currently pending before the Court.  Specifically, Defendant, in addition to filing two motions seeking the appointment of counsel (Dkt. No. 1378 and 1449), has filed: a motion to reduce his sentence under Section 404 of the First Step Act (Dkt. No. 1367); a motion for compassionate release (Dkt. No. 1452);[1] a motion for resentencing (Dkt. No 1405), as well as a motion to expedite (Dkt. No. 1436).

      For the reasons which follow, Defendant's First Step Act motion (Dkt. No. 1367); motion for compassionate release (Dkt. No. 1452); and motion for

---

[1] While Defendant had previously filed a prior Motion Seeking Compassionate Release (Dkt. No. 1380), prior to the filing of his most recent compassionate release motion (Dkt. No. 1452), Defendant filed a motion seeking to withdraw (Dkt. No. 1451) his original compassionate release motion (Dkt. No. 1380) and to replace it with his most recent motion. (Dkt. 1452).  Defendant's motion (Dkt. No. 1451) is hereby **GRANTED**, and Dkt. No. 1380 is withdrawn and replaced with Dkt. No. 1452.

resentencing (Dkt. No 1405) are each **DENIED**.  Further, Defendant's motions seeking appointment of counsel (Dkt. No. 1378 and 1449) and to expedite (Dkt. No. 1436) are **DENIED**.

I. <u>**BACKGROUND**</u>

On September 9, 1994, a nine-count third superseding indictment was returned against the Defendant (Dkt. No. 716). By way of a written plea agreement (Dkt. No. 902), on January 9, 1995, Defendant pled guilty to all nine counts of the third superseding indictment.  Specifically, Defendant pled guilty to the following crimes: in Count 1, participating in a RICO enterprise, in violation of 18 U.S.C. § 1962(c); in Count 2, RICO conspiracy, in violation of 18 U.S.C. § 1962(d); in Count 3, engaging in a Continuing Criminal Enterprise ("CCE"), in violation of 21 U.S.C. § 848(a); in Count 4-6, three counts of murder while engaged in a CCE, in violation of 21 U.S.C. § 848(e)(1)(A); in Count 7, with narcotics conspiracy, in violation of 21 U.S.C. § 846; in Count 8, with murder for hire, in violation of 18 U.S.C. § 1958; and in Count 9, with possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841.  (Dkt. No. 902, ¶1).

The conduct upon which Defendant's guilty pleas were based stemmed from his role as a leader of a violent enterprise known as the "LA Boys," the "Cali Boys," or the "Cali Crips" that was involved trafficking significant quantities of cocaine and other drugs between California; Memphis, Tennessee; and Buffalo, New York.  (Dkt. No. 902, ¶25).   Defendant admitted to his role in, among other things, organizing and participating in the murder of three people, attempting to murder 17 other

persons, kidnaping one person, and distributing between 50 and 150 kilograms of cocaine, and more than 1.5 kilograms of cocaine base. (Dkt. No. 902, ¶25). Among those in whose murder and attempted murder Defendant participated, were individuals who had been or were going to be witnesses against members of the enterprise led by Defendant. (Dkt. No. 902, ¶ 25).

Defendant's plea agreement with the Government contained an agreement, pursuant to then-Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure, that Defendant would be sentenced to five consecutive terms of life imprisonment, and to three additional life terms as well as a 10-year term, each imposed concurrent to one another and to the five consecutive life terms (Dkt. No. 902, ¶23).

Defendant's Presentence Report ("PSR") calculated his total offense level under the sentencing guidelines as 52 and criminal history category as III yielding a sentencing range for imprisonment of life (PSR, ¶175).[2] On March 31, 1995, the Hon. John T. Curtin, United States District Judge for the Western District of New York, accepted the terms of the plea agreement and sentenced Defendant to five consecutive terms of life imprisonment (Counts 1, 3, 4, 5, and 6); the Court further imposed three additional terms of imprisonment of life (Counts 2, 7, and 9) as well as a sentence of 10 years (Count 8) all imposed to run concurrent with one another as well as with the five consecutive life terms (Dkt. No. 940). As expressed in the Statement of Reasons included as part of the Judgment filed in the case, Judge

---

[2] The PSR, revised as of March 20, 1995, was not filed with the Clerk of the Court, and was obtained by the Court from the United States Probation Office.

Curtin imposed "consecutive life sentences due to the extensive and violent nature of defendant's criminal conduct" (Dkt. No. 940, at 5).

The Court will address Defendant's motions individually.

## II.     **FIRST STEP ACT MOTION**[3]

The Fair Sentencing Act increased the quantities of crack cocaine that must be charged and proven beyond a reasonable doubt to trigger certain statutory sentence ranges. Section 2 of the Fair Sentencing Act raised the threshold quantity from 5 to 28 grams for offenses charged under 21 U.S.C. § 841(b)(1)(B)(iii), and from 50 to 280 grams for offenses charged under § 841(b)(1)(A)(iii). *See United States v. Moore*, 975 F.3d 84, 88–89 n.5 (2d Cir. 2020). Because the Fair Sentencing Act did not apply retroactively, only defendants sentenced on or after August 3, 2010, benefitted from its provisions. *Id*.

In 2018, Congress enacted the First Step Act, which gives district courts discretion to consider whether to reduce sentences for specified offenses that had been imposed before the Fair Sentencing Act:

A court that imposed a sentence for a covered offense may ... impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act ... were in effect at the time the covered offense was committed. Section 404(a) defines the term "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act ... that was

---

[3] Dkt. No. 1367.

committed before August 3, 2010." *Id*. The Second Circuit has recognized that "the explicit reference to sections 2 or 3 of the Fair Sentencing Act demonstrates that the First Step Act permits a sentencing reduction *only* to the extent that sections 2 or 3 of the Fair Sentencing Act would apply." United States v. Martin, 974 F.3d 124, 138 (2d Cir. 2020). Accordingly, the First Step Act provides courts with authority to reduce sentences only if they were "imposed for violations of a 'covered offense.'" *Id*.; *see also id*. at 137 (holding that "where an inmate is imprisoned upon multiple sentences that are aggregated for administrative purposes, courts require specific modification authorization ... for *each* term of imprisonment contained in an otherwise final judgment of conviction").

Defendant suggests that his convictions under Count 1 (RICO), Count 2 (Conspiracy to Commit RICO), Count 3 (CCE – Narcotics), Count 7 (Narcotics Conspiracy), and Count 9 (Narcotics Trafficking) are all offenses covered under the First Step Act (Dkt. No. 1367, at 3-4).  With respect to Count 9, which charged Defendant with possession with intent to distribute 50 grams or more of cocaine base and 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 841(b)(1)(B), Pre-Fair Sentencing Act, this charge had a maximum term of imprisonment of life. Applying the Fair Sentencing Act to Count 9 would reduce the maximum term of imprisonment that could be imposed on such term from life to 40 years.  Even disregarding the amount of cocaine base involved in the offense and calculating Defendant's sentencing range exclusively on the amount of cocaine to which Defendant allocuted as being involved in the offense—*i.e.*,

between 50 and 150 kilograms (Dkt. No. 902 ¶5)—the adjusted offense level for the offense of conviction would be reduced from 46 to 44, such that the applicable Guidelines range would, notwithstanding the statutory maximum, remain life imprisonment. However, with a 40-year statutory maximum, his sentence for that offense would cap at 40 years. Unlike Count 9, however, the remaining "covered offenses" suggested by Defendant—Counts 1, 2, 3, and 7—each had a maximum term of imprisonment of life without regard to any quantity of cocaine base. Yet, even if, for the sake of argument, this Court were broadly to treat such Counts as involving "multi-object conspiracies involving a crack cocaine object," *see, United States v. Reed*, 7 F.4th 105, 110-113 (2d Cir. 2021),[4] such that each might appropriately be considered a "covered offense," *see, e.g., United States v. Grullon*, No. 99-CR-1142-008 (JGK), 2020 WL 2793054, at *2 (S.D.N.Y. May 29, 2020), Defendant is still not entitled to a reduction of his sentence.

---

[4] *But see, United States v. Allen*, No. 22-6746, 2023 WL 3050985 (4th Cir. Apr. 24, 2023), wherein the Fourth Circuit expressly concluded that a RICO count—as those charged in Counts 1 and 2 here—were not covered offenses. In so doing it observed:

> [T]he Fair Sentencing Act did not change the statutory penalty range for an aggravated RICO conspiracy. That a covered offense could have formed the predicate for [a particular] element does not change the analysis.... To the extent that drug offenses form the predicate of a RICO conspiracy, the RICO charge does not "turn on the punishment" for the drug offenses. Rather, the RICO charge turns on the conduct underlying the drug offenses — the commission of a drug offense.... The element that includes the racketeering activity does not turn on the type or quantity of drug like the elements of the drug offenses do. Instead, 18 U.S.C. § 1963 controls the punishment, not 21 U.S.C. § 841(b). And, although the Fair Sentencing Act modified the statutory penalties for 21 U.S.C. § 841(b), it left the statutory penalties for 18 U.S.C. § 1963 unaltered.

*Id*. at *8.

That is because the Second Circuit has expressly recognized that "drug-related murder, in violation of 21 U.S.C. § 848(e)(1)(A) is not a 'covered offense' under Section 404(b) of the First Step Act." *United States v. Fletcher*, No. 20-1180, 2021 WL 1823277 (2d Cir. May 7, 2021).  Defendant was convicted of 3 counts of violation of 21 U.S.C. § 848(e)(1)(A) under Counts 4, 5, and 6, and sentenced to consecutive life sentences under each. Thus, the First Step Act does not and cannot provide Defendant with any relief from them.  As the Second Circuit has explained:

> Sentences are imposed for specific convictions within judgments of conviction. Judgments of conviction are final judgments that are only modifiable by courts in limited circumstances, including where "expressly authorized" by statute. The fact that multiple sentences may be aggregated for administrative purposes does not authorize a court to treat those sentences as an undivided whole, the authorization to modify one part of which confers authorization to modify the whole. ... Thus, where an inmate is imprisoned upon multiple sentences that are aggregated for administrative purposes, courts require specific modification authorization—either due to a change in the guidelines ranges for a sentence on a particular count of conviction, or because a statute authorizes the reduction of a sentence—**for each term of imprisonment contained in an otherwise final judgment of conviction**.

*United States v. Martin*, 974 F.3d 124, 130, 137 (2d Cir. 2020)(emphasis supplied). Here, since Section 404 of the First Step Act unquestionably does not cover Defendant's convictions under Counts 4, 5, 6, it affords him no relief from the 3 consecutive life sentences which were imposed thereunder.  *United States v. Young*, 998 F.3d 43, 55 (2d Cir. 2021) (holding that a defendant's "eligibility for resentencing on Count One does not alter his ineligibility for resentencing on Count Two"); *see also*, *United States v. White*, No. CR 93-97 (BAH), 2022 WL 3646614, at *22 (D.D.C.

7

Aug. 24, 2022) ("The First Step Act did not alter the penalty ranges for homicide offenses, and so defendants serving sentences for murder and other federal homicide offenses are generally ineligible for relief due to the presence of non-"covered offenses""); *United States v. Sumler*, No. CR 95-154-2 (BAH), 2021 WL 6134594, at *2 (D.D.C. Dec. 28, 2021)("defendant's motion for a reduced sentence under Section 404 of the First Step Act is denied since one of his convictions, for which he is serving a life sentence, is not covered by Section 404 of the First Step Act."). "[T]he plain language of the Act permits the limited modification of a specific sentence, it does not give district courts carte blanche to modify terms of imprisonment other than those imposed for 'covered offenses.'" *United States v. Young*, 998 F.3d at 55 (internal citations omitted). Because Counts 4, 5, and 6 are not "covered offenses" and because Defendant received consecutive sentences of life imprisonment on each of those Counts, he is ineligible for resentencing. *United States v. Contrera*, No. 20-4083-CR, 2022 WL 301784, at *1 (2d Cir. Feb. 2, 2022), *cert. denied*, 143 S. Ct. 511, 214 L. Ed. 2d 291 (2022).

For the foregoing reasons, the Court **DENIES** Defendant's motion (Dkt. No. 1367) for relief under Section 404 of the First Step Act and for resentencing (Dkt. No. 1405) because he is not eligible for a sentence reduction.[5]

---

[5] Additionally, and alternatively, the so-called concurrent sentence doctrine also provides an additional basis for this Court to decline to review the validity of Defendant's sentences under Counts 1, 2, 3, 7, and 9, and the First Step Act. *See*, *United States v. Jefferson*, 60 F.4th 433 (8th Cir. 2023) (applying concurrent sentence doctrine to deny defendant's motion for sentence reduction pursuant to First Step Act). In view of the fact that, at a minimum, the consecutive life sentences imposed under Counts 4, 5, and 6 are not implicated in any way by Section 404(b) of the First Step Act, and since the

### III.     **COMPASSIONATE RELEASE MOTION**[6]

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)). The First Step Act, which modified 18 U.S.C. § 3582(c), allows the Court to modify a defendant's sentence upon a motion of either: (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). "The statute imposes three independent, necessary requirements for release: exhaustion of remedies, existence of an extraordinary and compelling reason for sentence reduction, and that the § 3553(a) factors warrant reduction." *United States v. Hunter*, No. 21-1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citing *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam)). "If any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements." *Id*. (citing *Keitt*, 21 F.4th at 72–73); cf. *United States v. Torres*, No. 16-CR-0500, 2022 WL 538323, at *2 (S.D.N.Y. Feb. 23, 2022) ("Before a compassionate-release motion can be considered on the merits,

---

Court finds with reasonable certainty that Defendant will not suffer any "additional adverse collateral consequences… by leav[ing] his …sentence[s under Counts 1, 2, 3, 7, and 9] unreviewed," *Kassir v. United States*, 3 F.4th 556, 561 (2d Cir. 2021), this Court need not reach his challenges to the sentences imposed on those counts.

[6] Dkt. No. 1452.

the defendant must exhaust administrative remedies.") (quoting *United States v. Williams-Bethea*, 464 F. Supp. 3d 562, 565 (S.D.N.Y. 2020)). The defendant bears the burden of proving that he is entitled to compassionate release. *See United States v. Earlsey*, 568 F. Supp. 3d 298, 301 (W.D.N.Y. 2021).

Assuming exhaustion is established, courts have discretion under the First Step Act to grant compassionate release when (1) there are "extraordinary and compelling reasons" that warrant a sentence reduction, (2) the sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the sentence reduction "is supported by the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Canales*, No. 16-CR-0212, 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). District Courts can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020); *see id*. at 236 (finding that "[b]ecause Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants [as compared to those brought by the BOP], Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling"). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation ... alone shall not be considered an extraordinary and compelling reason.'" *Id*. at 237-38 (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)).

10

If a defendant establishes both exhaustion and the existence of extraordinary and compelling circumstances, then the Court must also "consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." *United States v. Davies*, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted). ("Even if extraordinary and compelling reasons exist, they must outweigh the [Section] 3553(a) [F]actors to warrant sentence reduction." (citing 18 U.S.C. § 3582(c)(1)(A))).

Because Johnson is now proceeding *pro se*, the Court will construe his motion liberally, interpreting it "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation omitted); *Donaldson v. United States*, 2018 WL 703102, at *2. But, as the moving party, Defendant still bears the burden of demonstrating his entitlement to early release. *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (citations omitted)); *accord United States v. Earlsey*, 568 F. Supp. 3d at 301.

Defendant has submitted some evidence indicating that the warden of the facility at which he is housed failed to respond within 30 days to a request for

11

compassionate release that he filed on June 1, 2021.  (Dkt. No. 1452, p. 125).[7]
Thus, the Court determines that defendant has satisfied the exhaustion requirement.

In support of his request, Defendant cites various health conditions from which he suffers including: (1) malignant neoplasm of the prostate; (2) chronic kidney disease; (3) hypertension; and (4) sickle-cell trait, and how such conditions make him particularly vulnerable to COVID-19.  (Dkt. No. 1452, p. 7).  He also cites mental depression.  (Dkt. No. 1405, p. 1). He also cites his age (62), his youth at the time he committed the crimes (he was in his mid to late-20s), the amount of time he has been incarcerated (over 31 years), his rehabilitation, and his remorse as factors which justify a reduction in his sentence.

Regarding Defendant's health, defendant has failed to establish that the conditions that he has currently present a compelling basis for early release. The evidence shows that Defendant is being treated for the conditions he has identified. As to the interplay between his health conditions and COVID-19, Defendant presents the issue as though it is late-2020 or early 2021, notwithstanding the vastly

---

[7] It appears that this was not Defendant's first compassionate release request. On October 28, 2020, the defendant filed a request for compassionate release with his warden. The request was denied (Docket Item 1380, at 94-95). The basis for the denial as expressed by the warden was as follows:

> You do not meet the criteria for Compassionate Release/Reduction in Sentence based on sections 571.61(3)(a), Terminal Medical Condition, and 571.61(3)(b), Debilitated Medical Condition. You are currently classified as a medical care level 1 inmate with no medical restrictions. You do not have any physical restrictions and you are independent with your activities of daily living.

(Docket Item 1380, at 94).

altered health environment today with respect to COVID-19. *See*, *United States v. Rodriguez*, No. 12 Cr. 790 (PAE), 2024 WL 244379, at *4 (S.D.N.Y. Jan. 23, 2024) (denying release motion based on continuing COVID-19 risk, and noting that "vaccines have been available to federal inmates for more than two and a half years," and that "the spike of deaths and adverse outcomes among such inmates from COVID-19 in 2020 and 2021 is a thing of the past").

Defendant has submitted a great deal of literature in the form of medical journal articles regarding his conditions. While the medical records that Defendant did provide support his claim that he has been diagnosed with some serious health conditions, including prostate cancer, chronic kidney disease, and hypertension, they also demonstrate that he has received treatment for such conditions at the BOP medical center FMC Butner. On the record before the Court, this case is thus akin to the many in which courts have denied motions for compassionate release where the defendant did not show that the BOP was incapable of attending to his medical needs. *See, e.g., United States v. Lewis,* No. 00-CR-1118 (JSR), 2023 WL 4054508, at *2 (S.D.N.Y. June 16, 2023)*, reconsideration denied,* No. 00-CR-1118 (JSR), 2023 WL 5211310 (S.D.N.Y. Aug. 14, 2023)(denying compassionate release motion and noting that "prostate cancer is not an unusual medical condition in the prison population, and the BOP is equipped to treat it and to arrange surgery when required."); *United States v. Bradley*, No. 19 Cr. 632, 2023 WL 3004660, at *2 (S.D.N.Y. Apr. 19, 2023) (denying compassionate release where the BOP was able to manage defendant's diabetes, hypertension, high blood pressure, and urinary

13

tract disorder); *United States v. He*rring, 10 Cr. 391-67 (CM), 2022 WL 633871, at *3 (S.D.N.Y. Mar. 4, 2022) (denying compassionate release where BOP medical staff was providing "appropriate care" for defendant's complications due to his obesity); *United States v. Borelli*, No. 84 Cr. 63 (LAP), 2021 WL 2228075, at *3 (S.D.N.Y. June 2, 2021) (denying compassionate release where defendant suffered from diabetes, hypertension, heart disease, and cataracts and there was "no indication that his medical conditions cannot be managed—or, for that matter, are not already well-controlled—through BOP-provided medical care"); *United States v. Gotti*, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020) (denying motion for compassionate release where defendant with heart and lung conditions could be "adequately treated and monitored" by the BOP); *United States v. LoCascio*, 90 Cr. 1051, 2020 WL 12719849, at *2, 6 (E.D.N.Y. July 17, 2020) (denying compassionate release where BOP was able to "manage" the defendant's chronic kidney disease, coronary artery disease, and heart failure); *United States v. Mood*, 19 Cr. 113 (VB), 2020 WL 3256333, at *1 (S.D.N.Y. June 16, 2020) (denying compassionate release where, despite defendant's hypertension, diabetes, and obesity, his "condition is stable and has been effectively managed by routine monitoring and medication").

As to his age at the time of the offense, the Court recognizes that youth at the time of the offense can contribute to a finding of extraordinary and compelling circumstances, *see Brooker*, 976 F.3d at 238, particularly where the crimes were "split-second" and "hot-headed," *United States v. Ramirez*, 571 F. Supp. 3d 40, 48-49 (S.D.N.Y. 2021). That was not the case here, as the conduct – including the

multiple murders and attempted murders—were all committed while Defendant was at least 26 years of age or older and continued over a period of years. Defendant's acts of violence were planned and often in retaliation for individuals seeking to encroach on the turf of the drug enterprise he led or in retaliation for individuals choosing to cooperate with law enforcement. While Defendant has certainly matured and gained wisdom in the over 31 years he has been incarcerated, and such facts likely have diminished the risk of danger that he currently presents to others, the need for deterrence remains.

Finally, Defendant also points to his rehabilitation. (Dkt. No. 1095, p. 11). "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C.A. § 994(t); *see also Brooker*, 976 F.3d at 237-38 ("The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation ... alone shall not be considered an extraordinary and compelling reason.'") (quoting 28 U.S.C. § 994(t)). Here, while Defendant's participation in programming, employment while in BOP custody, and new perspective on the value of life is certainly commendable, the fact is that through his own conduct Defendant deprived at least four other individuals that which seems to have found—the grace, wisdom, and perspective that come with age.

In view of the foregoing, this Court does not believe that the reasons advanced by Defendant, individually or collectively, amount to extraordinary and compelling circumstances. Yet, for the sake of argument, even if this Court did conclude that they did, the Court would still have to consider the § 3553(a) factors.

In considering those factors—as this Court, to the extent they are applicable, must, *see*, 18 U.S.C. § 3582(c)(1)(A); *United States v. Jones*, 17 F.4th 371, 374-375 (2d Cir. 2021)—the Court finds that they do not weigh in favor of a reduction of defendant's sentence. A review of the 10 pages of facts set forth in Defendant's plea agreement supporting his pleas of guilty demonstrates an extensive trail of violence, spanning several years, which led to his indictment and conviction, and those facts graphically depict the brutal and heinous nature of Defendant's crimes, including his effort to murder witnesses against him while he was detained pretrial (Dkt. No. 902, pp. 22-32). Further, and as is clear from the defendant's PSR, four murders, ten attempted murders, and the other crimes of violence—all committed while defendant was at least 26 years of age or older— literally drove defendant's guidelines sentencing range off-the-chart. (PSR, ¶¶11-33, 38-137).  He and his fellow gang members put large quantities of controlled substances into circulation and acquired firearms for other gang members to use. Additionally, and as specifically acknowledged in Defendant's written plea agreement (Docket Item 902, ¶27), as well as in his PSR (PSR, ¶177), his plea agreement with the Government removed death as a potential penalty for Defendant's crimes.

Even if this Court were to conclude that Defendant's conduct in participating in multiple murders and numerous attempted murders does not, in and of itself, disqualify Defendant from consideration for compassionate release, *see, e.g., United States v. Rodriguez*, —— F. Supp. 3d ——, 2020 WL 5810161 (S.D.N.Y. Sept. 30, 2020) (granting compassionate release to a prisoner serving a mandatory sentence

of life without the possibility of parole for murder of a government informant); *United States v. Gluzman*, Docket No. 7:96-cr-323, 2020 WL 4233049 (S.D.N.Y. July 23, 2020) (granting compassionate release to defendant convicted of the premeditated murder of her spouse and sentenced to life); *United States v. Tidwell*, 476 F. Supp. 3d 66 (E.D. Pa. 2020) (granting compassionate release to defendant sentenced to life for murder in furtherance of a continuing criminal enterprise), this Court concludes that the nature of Defendant's violence combined with the number of murders and attempted murders with which he was involved and the span of time over which such violence took place, all favor denial of Defendant's motions at this time.

In short, even if the Court were to conclude that extraordinary and compelling circumstances exist—which it does not—the § 3553(a) factors continue, at this time, to outweigh them.  Thus, no reduction in sentence is presently warranted.

### IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to withdraw (Dkt. No. 1451) is hereby **GRANTED**, and Dkt. No. 1380 is withdrawn and replaced with Dkt. No. 1452. Defendant's First Step Act motion (Dkt. No. 1367); motion for compassionate release (Dkt. No. 1452); and motion for resentencing (Dkt. No 1405) are each **DENIED**.  Further, Defendant's motions seeking appointment of counsel (Dkt. No. 1378 and 1449) and to expedite (Dkt. No. 1436) are **DENIED**.

**IT IS SO ORDERED.**

*s/Richard J. Arcara*
_____
HONORABLE RICHARD J. ARCARA
SENIOR U.S. DISTRICT JUDGE

Dated: April 1, 2024
      Buffalo, New York.